The next case on the argument is Ramos-Perez v. Blanche. Where is Harrisburg? Your Honor? The thing says you're from Harrisburg, North Carolina? Yes, Your Honor. It is 60 seconds outside of Charlotte. Okay. Just outside of Charlotte. Yes, Your Honor. All right. I just wondered. I spent some time there. It's a lovely state. It's beautiful, Your Honor. Thank you. When you're ready. Good morning, Your Honors. May it please the Court? My name is Dominique Hardrick, and I am here on behalf of Teresa Perez-Ramos and her young son. Your Honor, the issue in this case, well, the issue before the Court is whether the board erred in upholding the immigration court's adverse credibility findings. When that finding fell outside the bounds of the RID Act and precedent established by this Court. Your Honor, the Court in this case selectively examined and determining credibility and failed to present a reason analysis of evidence, which matter of Shrezda requires. In Shrezda, the Court held that the immigration court must act within the rule of reason. And while taking the totality of the circumstances into account, which is the standard, I am going to point out three reasons why the Court made this adverse credibility finding. The first reason they stated was inconsistencies. The second reason they stated was responsiveness. And the third reason they stated was demeanor. However, during this argument, you will hear that the inconsistencies the judge noted were cherry-picked. Your Honor, the first point I want to make is in February, January 2022, the IJ noted that the petitioner continued to alternate whether or not it was the 7-year-old child's foot or the leg that was injured by the armed man who came into her house. Now, it doesn't matter whether or not it was the child's foot or the leg that was injured because there was no dispute that three adult males came into a single mother's home and poured boiling water on a 7-year-old son. In the record, there are pictures. In the record, the medical report stands. Furthermore, Your Honor, the Court stated that the petitioner had an inconsistency regarding whether or not she and her son were threatened during the second incident that happened May 7th in 2023. Well, during that incident, the petitioner was brutally raped. And during that time, the child was there. The Court argued that the petitioner stated that she was threatened, but in her written statement, her and her son was threatened. However, they do not dispute the fact that she was raped, and they cannot dispute that fact because in the medical report, it states not only was she raped, but she received a nervous disorder from that, and she had several cuts, bruises to her arms, her legs, and her face. Your Honor, I would like to point out that that is not an inconsistency at all. The child watched his mother be raped and was mentally traumatized and was threatened in nature. But the rape itself seems indisputable. The rape itself is indisputable, Your Honor. Just as the injury to the leg or the knee or the foot is indisputable, the issue may be precisely where it is, but in fact, we've got pictures. That is correct, Your Honor. Whenever anybody says, we've got pictures, you're in trouble. That is correct, Your Honor. Okay. Could I ask you, what is the standard for when something is trivial? That seems to come up in the briefs. What's your response to that? The standard for when something is trivial is it should not go to the heart of the claim, meaning that if it's trivial in nature, unless it changes the situation of the claim, it does not go to the heart of the issue, Your Honor. Therefore, it should not be weighted against the petitioner in this instance. Furthermore, the court stated another inconsistency, and that inconsistency was regarding the fact that the petitioner stated in court that her father interpreted for her for the police report. However, the police report states that the petitioner spoke directly to the police, noting that because the police report did not state that her father spoke or interpreted for her, that that was an inconsistency. However, in the record, you see when you see this judge speaking to the petitioner, it is as if they're speaking directly to the petitioner, and that is because the interpreter is but a tool, not a person to be represented speaking in that manner. As a matter of fact, in the record, when the judge wants to speak to the interpreter, the court says, judge to the interpreter, and that is noted in the record as well, Your Honor. So those consistencies that were noted were not inconsistencies at all. And due to the fact that the court did not take the totality of the circumstances into even considerate should mean that the credibility, the adverse credibility finding falls on its head, Your Honor. Now, the respondent, the petitioner, not only didn't have those consistencies, but the petitioner was illiterate. Not only was she illiterate, she stated several times that she had low levels of communication, and she stated also that she had terrible understanding. And during that case, Your Honor, she was not represented by legal counsel. She was represented by an accredited representative. However, all through the record, the court states that she's being represented by legal counsel. This record is riddled with error, and these errors are unconscionable and egregious. In my opinion, Your Honors, if I may, the Ninth Circuit is very specific on rape as persecution. A matter of curve, rape and other forms of sexual violence have a profound psychological impact on the victim. The court explained that rape's psychological effects are severe and long-lasting and include avoidance of situations that trigger memories and violation. The court stated that the petitioner was not responsive because of her answers. She was simply reciting her declaration, but failed to mention the fact that her declaration was read to her in the mom language initially right before the hearing, which means she didn't have time to remember the declaration from the beginning of her individual hearing from the time she stated it in court. The court failed to take into the totality of the circumstances that because the petitioner was illiterate, she only has certain cognitive pathways, which means she can only remember and recite what happened to her in specific ways. What am I to make of the IJ questioning her about her so-called mental condition? I found the IJ's line of questioning quite confusing. The issue, Your Honor, is that IJ did not question her mental capacity in any way, which he should have when he realized that she was unable to answer the questions that he was asking in the way he wanted her to ask them. He simply admonished her and told her she's not answering the questions in the way that he would like. No, I'm referring to a different part of the transcript. The translation says, I don't know these things because I didn't go to school. And also I had a very bad case of nerves, and so I lost my memory, and now I get confused. And he takes that to mean that she's got a memory problem. That is to say that she's got a mental condition, and he questions her about the mental condition. And concludes somehow that either it doesn't exist or that she's lying about it. But as I read it, I think it's a translation problem. I lost my memory. I think what she means is now this goes through two layers of translation, but I think it is I can't remember. That's different from a mental condition. I mean, I can't remember a lot of things, and I hope I don't have a mental condition. Well, yes, Your Honor, that is absolutely correct. And not only were there two interpreters, a mom interpreter to Spanish interpreter, a Spanish interpreter to English interpreter, but the record clearly states in the medical report that she had nervousness, neural nervousness issues. So that was a part of the record, even if she could not articulate it, which would make sense because she had a low level of education and she could not read the report herself. So the issue we're faced with was whether the adverse credibility determination is substantially supported or your argument is that the items pointed to are trivial and don't go to the heart of the claim. That's basically what you're saying. What I'm saying. Do you want to say yes? Yes, Your Honor. That is that is what I'm saying. But more more that they not only don't go to the heart of the claim, but the inconsistencies that were noted were not true inconsistencies. So I'm going to reserve the rest of my time and the court doesn't have any other questions. I do. OK, thank you. That's fine. And you've saved some time. Thank you.  Good morning. May it please the court. Russell Verbeem and half of the acting attorney general. Now, the immigration judge's doubts with respect to the lead petitioners credibility fall into two categories, responsiveness and outright inconsistencies between testimony and documentary evidence. But before we get there, I think we need to clarify what arguments from the petitioner are properly before this court. Before the agency, the lead petitioner challenged the immigration judge's findings with respect to responsiveness because she says she at least provided answers to the questions asked and clung to the events as described in the declaration. She also argued that the discrepancies noted by the immigration judge were trivial. But before this court, we have a wholesale shift in the position. We now have arguments that the immigration judge was wrong because immigration judge failed to take into account a lack of education, illiteracy and criminal victim trauma. We also have scholarly arguments, none of which were ever offered to the Board of Immigration Appeals as required under the exhaustion doctrine. And on top of that, we have never heard before arguments because of illiteracy. The only way the petitioner could store and recount events was by saying her declaration almost line for line. And also we even have in the petitioner's brief claims that the translation impacted the inconsistencies that were noted by the immigration judge. All of those arguments could have and should have been presented to the Board of Immigration Appeal. And while the exhaustion doctrine is no longer considered a jurisdictional matter, if it is raised by a party, it must be enforced. The attorney general raised it in his brief and the attorney general is maintaining that position before this court. There's no question that the petitioner of your friend on the other side is that the immigration judge relied upon trivial matters to determine adverse credibility. How do you respond to that? Well, Your Honor. That's before us. There's no question that's before us. That is the force of their argument. And I think I'm going to first off remind the court that we had a lot of talk about going to the heart of the matter. And as the court is aware, the heart of the matter statement is no longer applicable. It was removed by the Real ID Act. So it doesn't matter whether the inconsistency goes directly to the heart of the matter. But under Wren, it still must not be trivial. And I think it's a little hard to say what is trivial, but let's look at Wren. In Wren, what you had was the petitioner saying, based on what happened to him, roughly, I lost consciousness at day two of the event when his declaration said day three. So you had a difference of one day, and you had a discrepancy between the petitioner's own statement and his own declaration. That's not what's going on in this case. What's going on in this case is the specific inconsistencies noted by the immigration judge and then found again by the board involved. First set was the second attack. The declaration and the testimony from the petitioner was that as the attackers approached her, they threatened to kill her. They threatened her with various things and said they could do anything they wanted to her because she was a woman. The police report says the attackers approached her silently and then attacked her. That's a different type of discrepancy. It's not between the petitioner's own declaration and her testimony. It's between her testimony and a completely separate party. The police. If you move to the second discrepancy noted by the immigration judge, which is with respect to when the child petitioner was treated, the testimony was the child petitioner was treated three or four days after the injury to the leg. And we have the pictures of that admittedly, Your Honor. The problem is that is inconsistent with her father's letter, which says the child was treated the next day. And it's even more inconsistent. You know, if you read the transcript, one way of reading it and it's consistent with what they're saying is she took the boy to a clinic promptly and go to the hospital three or four days later. Well, but the problem is that's not what is came through in the testimony. And that's not really what came through with regard to this. I read the father's. I read the testimony. And it's the IJ who introduces what I think is the confusion between clinic and hospital. Well, we haven't still had a decent explanation from the petitioner about that. I mean, the court can disagree with it, but I think it goes back to whether the discrepancies are trivial or not. And they're not because they are a difference in degree and kind to those discussed in. What do we do? And how is the government defining trivial? Well, Your Honor, I don't think any court has really said what is trivial yet. I think the court sort of knows it when they see it. Like I said, I can only go by what we've seen from the decisions. I think Wren is the leading one on this. And like I said, in this case, we have a difference of degree with respect to the inconsistency and a difference of kind. And so I think that takes us out of whether this is trivial or not. Here I've got a slightly different question. I'm reading from the BIA opinion on appeal. Respondent asserts, quote, varying references to an injury to her son's foot or leg are consistent and the differences should be considered trivial. Then the BIA goes on to say, we just hear no clear error in the immigration judge's finding that the respondent at times described an injury to her son's foot and at other times described an injury on his leg. Why do we care? We know there's an injury. And whether it was foot or leg, and we've got pictures. I mean, why is this in here? Why is this in any way adverse to the claimant? I think the fact that there was an injury to the child's leg and my heart goes out to the child, the child was injured. But the way that the injury was presented was that it occurred as part of this attack. And the immigration judge doesn't believe that the petitioner has sufficient credibility to show that that injury, which could have happened under any number of circumstances, is actually tied to the attack she alleges. And that's because of the immigration judge's inconsistency finding, any one of which would be enough under the substantial evidence standard to support. Help me understand this. You're saying the immigration judge says there may be an injury, but it did not happen at all in connection with the incidents she's describing? The immigration judge is saying he does not believe the petitioner's story that those injuries were connected to, number one, this incident, perhaps, or that this incident makes up the standard for asylum. It's an adverse credibility assignment. You can't get past the adverse credibility portion to get into whether the injury supports the actual asylum claim. We haven't gotten that far yet, Your Honor. We're at, do I believe that this injury happened in the context the way it was presented? And the petitioner's story was so inconsistent and the demeanor finding, which we haven't even – sorry, not the responsiveness finding, which we haven't even touched yet. You say the petitioner's story was so inconsistent. Tell me more. As I read the story, it was consistent. The IJ didn't believe it. And oftentimes a very consistent story is false. I get that. Just because it's consistent doesn't mean it's true. But I didn't read her testimony as inconsistent. Where's the inconsistency? Well, the inconsistency is not only in the fact that the inconsistencies we just discussed about with respect to when the child went to the clinic and what happened in the alleged second attack with regard to what was said to this petitioner. She was approached by her attackers. But also it's a totality of the circumstances, Your Honor, and that includes the responsiveness. You're referring very generally to inconsistencies. I still don't understand what you think is inconsistent. Well, Your Honor, the ones by the immigration judge with respect to – I know you don't agree with me, Your Honor, but the government is going to maintain its position that when it comes to when that child was treated at the clinic, the dates don't match up between the petitioner's account, her father's account, and the medical professional's account. She and her father are off by one day. I get that. I get that. But it seems to me that I can read this entirely consistent. They go to the clinic and three or so days later they go to the hospital. Well, Your Honor, I mean you can obviously feel that way and I don't want to impinge upon His Honor's ability to do so. But the standard is substantial evidence. You read the transcript. I read the transcript. And it would have to be compelled versus just you and I have difference of opinion, Your Honor. That's the standard and I can't change that one. Nor can I. Does the record tell us – you pointed to one inconsistency about the difference between her version of the attack in terms of what the attackers may have said to her. Yes, Your Honor. And what was in the police report. Yes, Your Honor. Do we know where the police got the information that's in their report? Does the record tell us that? Well, the police report itself mentions that it came from the petitioner. Now, the petitioner wants to say that an interpreter was used and that wasn't mentioned. And it wouldn't be mentioned because the standard we use here in an immigration court is we don't identify the interpreter unless we need to. Well, I mean that seems to overlay our standard onto the Guatemalan police seems a bit of a stretch. But if we want to overlay standards, let's overlay standards and say police practices. Police practice, well, let's overlay it on the Guatemalan police. They would never leave out a potential witness from a police report. How do you know that? Well, I'm just saying. It's the way that we do it here. If we're going to play the overlay game, let's play the overlay game, Your Honor. And say that police officers don't leave out potential witnesses who could come up later in court to verify or to disprove a statement. It would be practice to put that person in there. And they didn't do it here if we're going to play the overlay game. You know, I don't understand the term overlay game. Well, the petitioner's counsel said that the police in Guatemala would not have listed the interpreter in the report. Because we don't do it here in the immigration courts in America. That was the overlay she tried to use. I'm using our police. I'll play the same game and use the overlay on police forces into Guatemalan police forces and say our police wouldn't leave that out. Because that is a potential witness. Is there any evidence in the record on that very point? No. Either way? Either way there isn't, Your Honor. What we take is the Guatemalan police at face value that this petitioner appeared and spoke to them. And the story was there was no statement before the attack. But when we get to court, there is a statement before the attack. That's an inconsistency. And if the standard is roughly described, an inconsistency that would cause a neutral fact finder to disbelieve testimony, the one you rely upon, the government relies upon, is this absence of discussions prior to the attack not being in the police report. That is certainly one of them. We rely on the others. But on top of that, Your Honor, we also have the judge's responsiveness finding. Because it's a totality of the circumstances standard. And when you look at it, if you start at page 135 of the record, there was some concerns by the immigration judge. So I'm on page 135. Do you want to just read to me so I know what we're talking about? Oh, boy. Well, take me a second to get there, Your Honor. Of course, your fingers never work when you need them to. My apologies for the delay, Your Honor. That's okay. I just want to make sure I understand your argument. So I want to get it right. Who else was in the house with you? And Miss Perez responds. I was in the house with my son. It was only two of us. They were forcing me to get out of the house and leave. And I didn't want to do so. I said no. They started hitting me, their hands kicking me. She answers the basic question but keeps going into the declaration. And this causes the immigration judge, as you can see there in a couple of moments, he stops the hearing. And he just talks to the petitioner and says, answer only the question that's put to you. And don't keep running through your declaration. Wait a minute. I want to make sure I understand what you're saying. And you said and then keeps going through the declaration. That's your term. Okay. Well, then he gives her some encouragement and says try to do better, I believe, or something along those lines. No, wait a minute. I want to make sure we're on the same page. It was you who said and then she keeps going through the declaration trying to reinforce your argument that all she's doing is reciting what she's memorized. There's nothing in here about the declaration. She's just testifying. Is that correct? She is testifying. And is there anything said there about the declaration by anybody? No, Your Honor. Okay. The judge doesn't say it at that occasion. But if you move to page 137 of the record, it appears to happen again. Do you see the judge stopping? On page 137, he does say that, correct? He does say that. He says, you have reviewed your declaration and you're coming here, but it doesn't seem like you're listening to the questions you're being asked. And instead, you are just telling us line for line from your declaration.  Now, I have read the declaration and I have read her testimony. And I was surprised given what the IJ said because, in fact, her testimony is all over the lot. And there is a declaration. And surprise, surprise, her testimony is roughly consistent with her declaration. But I don't see her reciting line for line. I wouldn't say it's line for line, but more event for event or parallel for parallel. Okay. I want to stop you again. You say you don't see it's line by line, but that's exactly what the IJ is saying. So you're disagreeing with the IJ that she's going line for line. Line for line, event for event. They're parallelly tracking each other. It's almost single track. Every time, not every time, but at least five times to six times in this record, she's asked the question. Doesn't always land near the question, but certainly then leaps into the very next sequence of event or line of her declaration, however you want to interpret that statement by the judge. And it was a repetitive thing that went on and on. And it's just like cases that this court has heard before where there's some concerns with respect to memorized story or regurgitating one's declaration. It is part of the totality of circumstances that can go into an adverse credibility finding. And an adverse credibility finding should not be overturned by this court unless the evidence is so overwhelming and compelling that no reasonable fact finder, whether you and I disagree or you and the immigration judge disagrees, would accept the finding from the immigration judge. Thank you, Ron. Thank you for your argument. Can I ask you a quick question? Yes, sir. If you don't mind. The pin on your lapel. Yes, sir. What's it for? A Department of Justice pin, sir. How long? This one's a 25-year pin, sir. Thank you. Yes, sir. Thank you for your service. Thank you, sir. Appreciate the support. Your Honor, Your Honors, I am going to request that you rule in favor of the petitioner. I am going to request that you rule in favor of the petitioner. I anticipated you would say that. What do you have in rebuttal to your friend on the other side's arguments? So my friend on the other side stated that the immigration judge was taken aback about how consistent the petitioner was with her declaration. However, further down into the immigration judge's finding, he speaks about how inconsistent she was with her written declaration, which honestly just does not track with what the immigration judge was saying previously. You cannot be consistent with your verbal declaration, line for line, and then be so inconsistent with the verbal declaration evidence where you receive an adverse credibility finding. Let me have you address the one thing that counsel for the department argues, and that is that her description of the events, specifically what may have been said to her and what's in the police report, are inconsistent. First of all, do you agree they're inconsistent? I do not agree that they are inconsistent. I think I heard his argument correctly. What he's saying is that her recitation is that they said a bunch of stuff to her, bad stuff, threats, etc., and then proceeded to assault her. The police report says that they appeared in silence and attacked her. Isn't that, in fact, inconsistent? That is an inconsistency. However, the court asked the petitioner about the inconsistency, and the petitioner stated that she cannot read and she did not read the police report, and if she was able to read the police report, she would have made that connection. She was speaking through an interpreter. The petitioner does not speak Spanish. She only speaks Mom. Due to that fact, the court requested an explanation, and she gave a clear explanation stating that's not what I said. Instead of the court expounding further on what was said, the court just noted it as an inconsistency. Okay. Your Honor, there are a few things that are undisputed. The fact that the child was burned within the time frame of the attack. The time frame of the attack that opposing counsel states they couldn't possibly have happened during the same time was only four days. So the child was burned. The medical clinic wrote a report, and then they had to go to the hospital because the child was going to have to get one of his extremities amputated because of the severity of the injury, and what the mother stated was four days. Well, during that time, it does not give way for a bunch of things to happen, including another injury between going to the clinic and an attack happening. The first attack happened on February 20th, and I believe in this case, my time is short, that that was also an interpretation issue because there were two interpreters. Now, the father stated that it was a day late. The medical report stated that it was the same day, and the traumatized petitioner stated that was four days later. Well, at this point, you have corroborating evidence that is in the record that is from the medical facility that states that this happened on this day. It wasn't months apart. It was a matter of days, Your Honor. So I cannot view that, and I don't believe you should view that as an inconsistency as well. I believe that the immigration court deserves deference if they would have followed the law, if they would have followed SHRESDA, if they would have followed the REAL ID Act. However, in this case, they did not. I am going to ask you to reverse the immigration judge's decision, remand it, and with instructions for them to take into account all of the circumstances, the trauma that happened that's undisputed. What I think you want is for us to remand and deem credible. That is what I want you to do, Your Honor. Thank you. Thank you, counsel. Thank you, Your Honor. Thank you. Thank both sides for their argument. Case of Ramos-Perez v. Blanche is now submitted.
judges: HAWKINS, FLETCHER, SMITH